UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MARIA MAGANA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. EDCV 14-02283 (GJS)<br><br>MEMORANDUM OPINION AND ORDER |

## I.　PROCEEDINGS

Plaintiff Maria Magana ("Plaintiff") filed a complaint seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge, and a Joint Stipulation addressing disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.　BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISIONS

Plaintiff applied for DIB and SSI in March 2011, alleging disability since

November 15, 2006, due to problems with her back, neck, shoulders, hands, and fingers, high blood pressure, and headaches. (Administrative Record ("AR") 68, 164-76, 213). Plaintiff's applications were denied initially and on reconsideration. (AR 63, 83-92).

After a hearing, an Administrative Law Judge ("ALJ") issued a decision applying the five-step sequential evaluation process to find Plaintiff not disabled. (AR 63-77); *see* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b).[1] The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; impingement syndrome of the bilateral shoulders; and status post left shoulder arthroscopy. (AR 65). The ALJ determined that Plaintiff's conditions did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 67). The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)), including: lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing, walking and sitting without any restrictions or limitations; occasionally climbing ladders, ropes, or scaffolds; and occasionally reaching in all directions, including above the

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

shoulders, bilaterally. (AR 68). The ALJ determined that Plaintiff is unable to perform her past relevant work, but is capable of making a successful adjustment to other work that exists in significant numbers in the economy, including work as an information clerk and a counter clerk. (AR 75-77). Therefore, the ALJ concluded that Plaintiff is not disabled. (AR 77).

The Appeals Council denied Plaintiff's request for review. (AR 1-3).

On November 6, 2014, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision denying benefits. Plaintiff now raises the following arguments: (1) the ALJ failed to properly consider the relevant medical evidence in assessing Plaintiff's RFC; (2) the ALJ failed to provide adequate reasons for discrediting Plaintiff's subjective complaints; and (3) the ALJ erred in finding that Plaintiff is capable of performing the jobs of information clerk and counter clerk. (Joint Stipulation ("Joint Stip.") at 3-6, 10-13, 20-23, 25). The Commissioner asserts that the ALJ's decision should be affirmed. (Joint Stip. at 6-10, 13-20, 23-25).

### III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV.   DISCUSSION

**A. Plaintiff's RFC**

Plaintiff contends that the ALJ erred in assessing her RFC, as it did not

encompass limitations relating to all of Plaintiff's impairments, as described by several doctors and Plaintiff's own testimony. (Joint Stip. at 3-6).

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine, but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *See* 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). However, an ALJ is not bound to accept the opinion of a treating physician. The ALJ may give less weight to a treating physician's opinion that conflicts with other medical evidence if the ALJ provides specific and legitimate reasons for discounting the opinion supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830-31.

Although ALJs "are not bound by any findings made by [nonexamining] State agency medical or psychological consultants, or other program physicians or psychologists," ALJs must still "consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled" because such specialists are regarded as "highly qualified . . . experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other

4

medical specialist." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); *see also* Social Security Ruling ("SSR") 96-6p ("Findings . . . made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

### 1. The Nonexamining State Agency Consultant

In February 2012, Evelyn Adamo, Ph.D., a nonexamining State agency psychologist, reported that Plaintiff suffered from a severe impairment of depressive disorder, NOS. (AR 552). Dr. Adamo opined that Plaintiff was moderately limited in her abilities to maintain attention and concentration for extended periods, and would have moderate difficulties maintaining concentration, persistence or pace. (AR 559, 563). Plaintiff contends that the ALJ erred by failing to incorporate any mental functional limitations into Plaintiff's RFC. (Joint Stip. at 4). The Court disagrees.

In the decision, the ALJ gave adequate consideration to Dr. Adamo's opinion and stated an appropriate reason for rejecting it. *See* 20 C.F.R. §§ 404.1527(e)(2) (ii), 416.927(e)(2)(ii); *see also* SSR 96-6p. The ALJ considered Dr. Adamo's finding that Plaintiff's depression was a severe impairment, but relied instead on the opinion of a second State agency physician, Uwe Jacobs, Ph.D. (AR 67, 549-60, 563-66, 575, 587). Dr. Jacobs opined that Plaintiff had no more than mild limitations, and noted that the record contained an opinion from another doctor indicating that Plaintiff's condition was not severe. (AR 587). The ALJ's implicit rejection of Dr. Adamo's opinion was not reversible error.

The ALJ also cited other medical evidence to support his assessment of Plaintiff's mental functioning. (AR 67). The ALJ noted that the examining

5

psychiatrist, Reynaldo Abejuela, M.D., concluded that Plaintiff's limitations in occupational and social functioning were "none to mild." (AR 67, 544). Dr. Abejuela stated that Plaintiff's symptoms, which included a mildly depressed and mildly anxious affect, were expected to abate with continued use of medications prescribed by Plaintiff's primary care doctor. (AR 540, 544). The ALJ assigned "great weight" to Dr. Abejuela's examining opinion, thereby resolving any conflicts in the medical evidence concerning Plaintiff's mental impairment. (AR 67); *see Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

## 2. The Medical Expert and Treating Physician

At the administrative hearing, Robert Thompson, M.D., a nonexamining medical expert, testified that Plaintiff was capable of performing work at the light exertional level. (AR 23). The ALJ found this assessment to be consistent with the objective medical evidence. (AR 74). However, Dr. Thompson further opined that Plaintiff was precluded from overhead reaching bilaterally, climbing ladders and scaffolds, and exposure to heavy industrial vibrations, and was limited to occasional handling, fingering, feeling, pushing and pulling with the right hand, and occasional pushing and pulling with the left hand. (AR 23-24). The ALJ found these additional restrictions to be inconsistent with the objective medical evidence. (AR 74).

Plaintiff challenges the ALJ's rejection of Dr. Thompson's testimony regarding Plaintiff's limitations in her ability to reach and use her hands. (Joint Stip. at 5, 10-11). Plaintiff argues that the ALJ erred in concluding that Dr. Thompson's opinion was inconsistent with the objective medical evidence of record, in light of the findings of one of Plaintiff's treating doctors, Mumtaz Ali, M.D. (Joint Stip. at 5). Dr. Ali, who diagnosed Plaintiff with carpal tunnel syndrome and pain syndrome in her cervical spine, noted that Plaintiff complained of constant pain in her neck and frequent pain and numbness in both hands. (AR

499-500). Dr. Ali also recommended nerve block treatments for Plaintiff's carpal tunnel syndrome. (AR 499-500). Plaintiff asserts that the findings of both Dr. Thompson and Dr. Ali should have been included in Plaintiff's RFC. (Joint Stip. at 4-5, 10).

In discounting Dr. Thompson's nonexamining opinion, the ALJ cited evidence in the record of Plaintiff's symptom magnification and exaggeration. (AR 74, 507). Specifically, the ALJ referred to a report from Dr. Ali indicating that Plaintiff demonstrated "give way motor weakness" in the upper extremities when she was seen by the orthopedic agreed medical examiner, Harvey Wieseltier, M.D. (AR 74, 327, 336, 338, 507). Dr. Wieseltier reported normal findings on examination of Plaintiff's hands and did not recommend surgery for carpal tunnel release, given only mild findings on Plaintiff's nerve conduction study. (AR 72, 74, 328, 338, 467, 507). The ALJ attributed great weight to Dr. Wieseltier's opinion. (AR 72-73,75). The ALJ's partial rejection of Dr. Thompson's opinion was not reversible error, given Dr. Wieseltier's contrary opinion, evidence of Plaintiff's symptom magnification, and the absence of objective evidence supporting Dr. Thompson's opinion. *See* 20 C.F.R. §§ 404.1527(e)(2) (iii), 416.927(e)(2)(iii); *see also Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (affirming the ALJ's rejection of a treating physician's opinion that was based on the claimant's self-reports, which the ALJ properly found to be exaggerated and unreliable).

While Dr. Ali did reference Plaintiff's complaints of neck pain and hand pain, Dr. Ali did not assess any functional limitations related to these conditions. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("[t]he mere existence of an impairment is insufficient proof of a disability"). Moreover, Dr. Ali reported that medications provided Plaintiff with pain relief. (AR 72-73, 509, 511). In particular, Dr. Ali noted that Plaintiff was able to sleep and perform activities of

daily living when she was taking her medication. (AR 509, 511). It was proper for the ALJ to discount Dr. Ali's opinion to the extent it was inconsistent with his treatment notes. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between doctor's recorded observations and his assessment of a claimant's abilities to stand and walk was a clear and convincing reason for rejecting doctor's opinion).

### 3. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ erred by failing to fully consider Plaintiff's testimony regarding her depression and the use of her hands and wrists in her RFC assessment. (Joint Stip. at 5-6). However, as discussed below the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony. (AR 69-70). Thus, the ALJ was not obligated to include those limitations in Plaintiff's RFC. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

### B. Plaintiff's Credibility and Statements of Plaintiff's Husband

#### 1. Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to state sufficient reasons for discounting her credibility. (Joint Stip. at 11-13).

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "clear and convincing" reasons to reject the claimant's testimony. *Smolen*, 80 F.3d at 1281-82; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'"

(quoting *Lester*, 81 F.3d at 834)). Moreover, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991). In addition to the "ordinary techniques of credibility evaluation," *Bunnell*, 947 F.2d at 346, the following factors may be considered in assessing credibility: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas*, 278 F.3d at 958-59.

Plaintiff injured her neck and shoulders while lifting boxes at work in 2006. (AR 25-26). Plaintiff also reported problems with her hands and wrists due to carpal tunnel syndrome. (AR 27-28). Plaintiff stated that her daily activities include sweeping, dusting, cleaning her house, and washing dishes. (AR 32). Plaintiff claimed that she is limited to walking for one-half hour before needing to rest for five to ten minutes, and sitting for one hour at a time. (AR 226).

The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent alleged. (AR 68-70). As discussed below, the ALJ offered legally sufficient reasons to support the adverse credibility determination.

For example, the ALJ found that medication helped to control Plaintiff's symptoms. (AR 69); *see Tidwell v. Apfel*, 161 F.3d 599, 601-02 (9th Cir. 1999) (in

assessing claimant's credibility, ALJ did not err in considering that medication "aided" claimant's symptoms); *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for benefits); *see also* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Plaintiff does not challenge this rationale, and the medical record supports the ALJ's conclusion. As discussed, Dr. Ali reported that Plaintiff was able to sleep and perform activities of daily living because her medications provided her with symptom relief. (AR 69, 509, 511). The effectiveness of medications in controlling Plaintiff's symptoms was a valid reason for discrediting Plaintiff's testimony. *See Tidwell*, 161 F.3d at 601-02; *Warre*, 439 F.3d at 1006.

The ALJ also properly observed that Plaintiff's subjective complaints and alleged limitations are inconsistent with her ability to engage in ordinary daily activities. (AR 69, 458); *Bunnell*, 947 F.2d at 346 (An ALJ may consider a claimant's daily activities when weighing credibility); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (holding that the ALJ did not err in discrediting the claimant's subjective complaints based in part on daily activities suggesting that the claimant was "quite functional," including caring for her own personal needs, cooking, cleaning, shopping, interacting with her nephew and boyfriend, and managing her finances). In particular, Dr. Wieseltier noted Plaintiff's complaints of significant levels of pain were inconsistent with her own accounts of day-to-day functioning. (AR 69, 458). For example, Plaintiff admitted that she was able to make the beds, make foods, wash dishes, clean, sweep, pick up things around the house, attend church, socialize with family and friends and continue to have intimacy. (AR 70, 458). Plaintiff's activities of daily living was a legitimate factor to consider in weighing Plaintiff's credibility. *See Burch*, 400 F.3d at 680-681.

The ALJ also highlighted Plaintiff's failure to seek treatment after receiving

10

a settlement in her workers' compensation case.  (AR 44, 68-69).  *Burch*, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination.").  At her hearing in 2013, Plaintiff testified that she received a workers' compensation settlement in 2012 for $29,000.  (AR 44, 68).  Although Plaintiff testified that she was still in need of surgeries to her neck, right shoulder and wrists, Plaintiff had not sought medical treatment or taken any prescription medications for her symptoms after receiving her workers' compensation settlement.  (AR 69).  Indeed, the record contains no medical reports from any treating physician after 2011.  The ALJ rationally inferred that Plaintiff's failure to seek treatment cast doubt on the severity of Plaintiff's subjective complaints.  *See Bunnell*, 947 F.2d at 346 (in assessing credibility, ALJ may properly rely on plaintiff's unexplained failure to request treatment consistent with alleged severity of symptoms).

Accordingly, reversal is not warranted based on the ALJ's alleged failure to properly consider Plaintiff's credibility.

### 2. Lay Witness Opinion

Plaintiff contends that the ALJ failed to provide adequate reasons for disregarding the third-party statements of her husband, Sergio Galvan. (Joint Stip. at 13; AR 229-36).

Lay witness testimony regarding a claimant's symptoms or impairments is competent evidence that "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  "[T]o discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'"  *Molina*, 674 F.3d at 1114 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).  The ALJ satisfied these standards here.

In the decision, after discussing Mr. Galvan's statements in his third party

function report, the ALJ properly discounted the lay evidence because it was inconsistent with the clinical and diagnostic medical evidence of record. (AR 70, 337, 458); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). The ALJ also noted that Mr. Galvan's statements essentially "parrot[ed]" Plaintiff's own allegations, which the ALJ discussed at length and rejected. (AR 68-70, 229-36). The ALJ may reject third party testimony that mirrors a claimant's testimony where the claimant's testimony is found to be not credible. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that ALJ gave a germane reason for rejecting claimant's wife's testimony where it was similar to claimant's own complaints that were properly rejected); *Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."). Thus, the ALJ's decision to discredit Mr. Galvan's opinion was not reversible error.

### C. Step Five

Plaintiff contends that the ALJ erred in finding that she is capable of alternative work at step five of the sequential evaluation process, as her RFC, which includes a limitation to occasional reaching, prevents her from performing the jobs that the vocational expert ("VE") identified at the administrative hearing.

When presented with a hypothetical question based on Plaintiff's RFC, the VE identified two examples of jobs that could be performed, information clerk (Dictionary of Occupational Titles ("DOT") 237.367-018) and counter clerk (DOT 249.366-010). (AR 41-42). The VE indicated that his opinion was consistent with the DOT. (AR 38-39). Plaintiff contends that the demands of the information clerk and counter clerk jobs are beyond her occupational limitations.

Plaintiff claims that she is unable to perform the information clerk job due to

12

her restriction to occasional reaching. (Joint Stip. at 20-21). As described in the DOT, the information clerk position requires frequent reaching. DOT 237.367-018. Plaintiff asserts that the ALJ erred by failing to solicit sufficient explanation from the VE for the deviation from the DOT. (JS 8-9); *see Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007). The Commissioner does not dispute that Plaintiff is precluded from performing the information clerk job, but argues that any error was harmless, as Plaintiff is still capable of performing the counter clerk job, which requires only occasional reaching. (Joint Stip. at 23-24); DOT 249.366-010. The Court agrees with the Commissioner. *See Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.") (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)).

Plaintiff contends that if she were restricted from all overhead reaching, the information clerk job, as well as the counter clerk job would be precluded. (Joint Stip. at 22; AR 41-42). However, Plaintiff's RFC did not preclude all overhead reaching. Rather, the ALJ found that Plaintiff was capable of occasional reaching in all directions, including above the shoulder reaching, bilaterally. (AR 68). Thus, Plaintiff's argument is rejected.

Plaintiff further asserts that if the ALJ had properly excluded the information clerk job, the question of whether significant numbers of the counter clerk job exist in the regional economy could have been explored. (Joint Stip. at 25). This argument is not persuasive. An individual will be found disabled at step five of the sequential analysis only if she is unable to engage in substantial gainful work that exists in the national economy in significant numbers. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If either the regional or national number of available jobs is "significant," a determination of non-disability should be upheld. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2010); 42 U.S.C. §§ 423(d)(2)(A) ("'work which exists in the national economy' means work which exists in

significant numbers either in the region where such individual lives or in several regions of the country"), 1382c(a)(3)(B) (same).  Here, although the VE did not identify the number of counter clerk jobs that were available regionally, the VE testified that 26,000 counter clerk jobs were available nationally.  (AR 42).  While the Ninth Circuit has never clearly established the minimum number of jobs necessary to constitute a "significant number" of jobs within the meaning of step five, *Barker v. Secretary of Health & Human Serv.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989), the ALJ reasonably concluded that 26,000 jobs available nationally constituted a significant number.  (AR 76-77); *see*, *e.g*., *Gutierrez v. Comm'r of the Soc. Sec. Admin.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding that 25,000 jobs available nationally was significant); *see also Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (30,000 jobs in the nation were significant); *Yepiz v. Colvin*, No. CV 12-05226 AJW, 2013 WL 1339450 at *9 (C.D. Cal. Mar. 28, 2013) (15,000 jobs nationally significant); *Albidrez v. Astrue*, 504 F.Supp.2d 814, 824 (C.D. Cal. 2007) (1,445 jobs regionally and 17,382 jobs nationally significant).  Also, Plaintiff does not actually challenge the ALJ's reliance on the number of jobs identified nationally.  Plaintiff, therefore, fails to demonstrate reversible error at step five.

## V.    CONCLUSION AND ORDER

Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.  The Clerk shall serve this Memorandum Opinion and Order and the Judgment herein on all parties or counsel.

DATED: November 17, 2015      _____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE